**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN DOE 1, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:26-cv-494 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| JOSEPH B. EDLOW, *et al.*, | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| Defendants. | : | |
| | : | |

<u>**OPINION & ORDER**</u>

This case is brought by twenty-five individual Plaintiffs, proceeding anonymously as John and Jane Does, against Defendants Joseph B. Edlow and Markwayne Mullin.  Defendant Edlow is the director of United States Citizenship and Immigration Services (USCIS) and Defendant Mullin is the Secretary of the United States Department of Homeland Security (DHS).  All twenty-five Doe Plaintiffs are foreign nationals with immigration benefit applications pending before USCIS. These applications have been placed on hold due to recently-adopted USCIS policies that Plaintiffs now challenge as unlawful.

Plaintiffs moved for a preliminary injunction, seeking to enjoin USCIS from enforcing these policies and arguing that the sweeping hold placed on their applications violates the Administrative Procedure Act.  (ECF No. 9-1 at 1–3, 8).  In response, the Government moved to sever and transfer venue of twenty-four of the Plaintiffs, arguing that most of the Plaintiffs did not reside in this district.  (ECF No. 11 at 1).  The Court held a telephonic status conference to address the status of these motions, ordering the Government to brief the merits of Plaintiffs' preliminary injunction motion by June 8 and setting a preliminary injunction hearing for June 10.  (ECF No.

1

18).   This opinion addresses the Government's motion to sever and transfer venue.   For the following reasons, the Government's motion is **DENIED**.

## I.      INTRODUCTION

This case is about USCIS policies that have placed holds on the final adjudication of pending immigration benefit applications submitted by Plaintiffs—foreign nationals who are lawfully present in the United States.   USCIS and DHS developed and promulgated these policies based on an executive order and two presidential proclamations issued by President Donald J. Trump in 2025, which restrict the ability of foreign nationals from certain countries to enter the United States.

On January 20, 2025, the first day of his second term in office, President Trump issued an executive order entitled *Protecting the United States From Foreign Terrorists and Other National Security and Public Safety Threats*.   Exec. Order No. 14161, 90 Fed. Reg. 8451, 8451 (Jan. 30, 2025).   That executive order directed the Secretary of State, Attorney General, Secretary of Homeland Security, and Director of National Intelligence to:  (1) identify resources for vetting and screening foreign nationals who were "seeking admission to the United States or who are already in the United States"; (2) "determine the information needed from any country to adjudicate any visa, admission, or other benefit" under the Immigration and Nationality Act for one of that country's nationals "to ascertain whether the individual seeking the benefit is who the individual claims to be" and "is not a security or public-safety threat"; (3) restore screening and vetting standards (as they existed at the end of President Trump's first term on January 19, 2021) for foreign nationals seeking "a visa or immigration benefit of any kind"; and (4) "vet and screen to the maximum degree possible" foreign nationals seeking admission to or already present in the United States, "particularly" those "from regions or nations with identified security risks."   *Id.*

The order also directed those officers to identify countries "for which vetting and screening information is so deficient as to warrant a partial or full suspension on the admission of nationals from those countries" under 8 U.S.C. § 1182(f). *Id.*

On June 4, 2025, President Trump issued Presidential Proclamation 10949, entitled *Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats*. Proclamation No. 10949, 90 Fed. Reg. 24497 (June 10, 2025). Proclamation 10949 characterized certain countries as having inadequate screening, vetting, identity-management, information-sharing, visa-overstay, terrorism-related, or repatriation practices, and placed entry restrictions on foreign nationals due to their supposedly deficient identity-management and information-sharing protocols. *Id.* at 24498–24499. This proclamation fully suspended the entry of foreign nationals from some countries, including Burma and Iran, into the United States. *Id.* at 24499–24501. It also imposed partial restrictions on certain other countries, including Venezuela. *Id.* at 24501–24502. By its terms, this proclamation only imposed entry restrictions, governing foreign nationals who were "outside the United States on the applicable effective date" and who lacked a "valid visa" on that date. *Id.* at 24502–24503. The proclamation came into effect on June 9, 2025. *Id.* at 24504.

Months later, DHS and USCIS would incorporate the country-specific concerns identified by President Trump in Proclamation 10949—which only addressed the entry of foreign nationals into the United States—to the adjudication of immigrant benefit applications. On November 27, 2025, they did so by updating the USCIS Policy Manual and issuing Policy Alert PA-2025-26, entitled *Impact of INA 212(f) on USCIS' Adjudication of Discretionary Benefits*. (ECF No. 1-1). The Policy Alert stated that "[e]ffective immediately, USCIS will consider relevant country-specific facts and circumstances such as those outlined in [Proclamation] 10949 as part of its

3

adjudication of discretionary benefit requests," including "certain adjustment of status applications, extension of nonimmigrant stay, and change of nonimmigrant status." (*Id.* at 1). USCIS would now treat those "country-specific factors" as "significant negative factors" when adjudicating discretionary benefit requests. (*Id.* at 2).

DHS and USCIS then issued Policy Memorandum PM-602-0192 on December 2, 2025, entitled *Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries*. (ECF No 1-2). This Policy Memorandum directed USCIS personnel to: (1) hold Form I-589 applications (Applications for Asylum and for Withholding of Removal) "regardless of the alien's country of nationality, pending a comprehensive review"; (2) hold pending benefit requests—including under Form I-485 (Application to Register Permanent Residence or Adjust Status), Form I-90 (Application to Replace Permanent Residence Card (Green Card)), Form N-470 (Application to Preserve Residence for Naturalization Purposes), Form I-751 (Petition to Remove Conditions on Residence), and Form I-131 (Application for Travel Documents, Parole Documents, and Arrival/Departure Records)—submitted by foreign nationals from countries listed in Proclamation 10949 "pending a comprehensive review, regardless of entry date"; and (3) "[c]onduct a comprehensive re-review of approved benefit requests for aliens from countries listed in [Proclamation] 10949 who entered the United States on or after January 20, 2021."[1] (*Id.* at 1). Thus, USCIS' December 2 Policy Memorandum held many types of immigrant benefit applications submitted by foreign nationals from the countries identified in Proclamation 10949.

---

[1] January 20, 2021 was the date when President Trump's first term in office ended, and President Joseph R. Biden, Jr. was inaugurated. *Blassingame v. Trump*, 87 F.4th 1, 6, 10 (D.C. Cir. 2023).

4

On December 16, 2025, President Trump issued Presidential Proclamation 10998, entitled *Restricting and Limiting the Entry of Foreign Nationals To Protect the Security of the United States*. Proclamation No. 10998, 90 Fed. Reg. 59717 (Dec. 19, 2025). Proclamation 10998 expanded the administration's entry restrictions to foreign nationals, naming "additional countries that cannot meet basic criteria for identifying their nationals and residents who pose national security and public safety threats and for sharing information with the United States." *Id.* at 59718. It continued the full entry restrictions on foreign nationals from several countries, including Burma and Iran, and added other countries, including Syria, to that list. *Id.* at 59721. It maintained partial restrictions on other countries, including Venezuela, and added other countries, including Nigeria, Tanzania, and Zimbabwe, to that list. *Id.* at 59721–59722. Its scope was limited "to foreign nationals of the designated countries" who were "outside the United States on the applicable effective date of this proclamation" and "do not have a valid visa on the applicable effective date of this proclamation." *Id.* at 59726. The proclamation would come into effect on January 1, 2026. *Id.* at 59728.

The same day that Proclamation 10998 came into effect, DHS and USCIS issued Policy Memorandum PM-602-0194, entitled *Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries*. (ECF No. 1-3). This Policy Memorandum directed USCIS personnel to "hold . . . all pending benefit applications, for aliens listed in [Proclamation] 10998 . . . pending a comprehensive review, regardless of entry date." (*Id.* at 1). Such a hold would permit "a case to proceed through processing, up to final adjudication." (*Id.* at 1 n.2). The Policy Memorandum also mandated comprehensive reviews of "all policies, procedures, and screening and vetting processes for benefit requests" from foreign nationals from the countries

listed in Proclamation 10998, as well as "comprehensive re-review[s] of approved benefit requests implicated in [Proclamation] 10998 that were approved on or after January 20, 2021." (*Id.* at 1).

## II. BACKGROUND

Twenty-five individual Doe Plaintiffs brought this suit on April 23, 2026 against USCIS Director Joseph B. Edlow and DHS Secretary Markwayne Mullin, challenging USCIS policies for alleged violations of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, and the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* (Compl., ECF No. 1 ¶¶ 1–7). [2]

These Plaintiffs hold citizenship in at least seven[3] different countries: Burma,[4] Canada, Iran, Nigeria, Syria, Tanzania, and Venezuela. They include a pharmacist working at a hospital, a cancer researcher receiving federal funds, STEM graduates with pending job offers at risk of rescission, a university professor, a pregnant woman unable to obtain work authorization as she prepares for the birth of her child, and applicants who already received approval for their employment authorization applications yet never received their authorization documents. (¶ 2). They do not all reside locally—although John Doe 1 is located in Columbus, Ohio, the remaining Plaintiffs are spread across the country, residing in California, Colorado, Florida, Georgia, Illinois, Maryland, Massachusetts, Missouri, North Carolina, Rhode Island, Texas, and Virginia. (¶¶ 14–33).

---

[2] All references to "Compl." and paragraph citations "(¶¶ __)" cite to Plaintiffs' Complaint (ECF No. 1), unless otherwise stated.

[3] Jane Doe 13 was born in Zimbabwe but holds Canadian citizenship. It is unclear whether she also holds citizenship in Zimbabwe, where she was born. The Complaint does not specify the citizenship of her child, Minor Doe 13. (¶ 26).

[4] Burma's official name is Myanmar, though the United States Government frequently still refers to Myanmar as Burma. *E.g.*, U.S. Dep't of State, *Burma,* https://www.state.gov/countries-areas/burma/ (last visited May 19, 2026).

On May 1, 2026, Plaintiffs moved for a preliminary injunction, arguing that they were likely to succeed on the merits and would "suffer imminent and irreparable harm absent preliminary relief." (ECF No. 9 at 1). On May 8, 2026, the Defendants moved to sever the Plaintiffs' individual claims in lieu of responding to the pending preliminary injunction motion, countering that the claims of each Plaintiff "turn on . . . unique facts and circumstances" and would properly be heard either in the district court where each Plaintiff resides or where each Plaintiff's benefit application was pending. (ECF No. 11 at 6). Defendants sought to transfer the severed cases to those judicial districts, requesting additional time to respond in each severed case. (*Id.* at 20). Plaintiffs opposed this motion, arguing that they seek vacatur of the challenged USCIS policies alongside a declaration that the policies are unlawful under the Administrative Procedure Act—not an evaluation of the merits of each Plaintiff's individual benefit application. (ECF No. 14 at 1). In reply, Defendants posit that Plaintiffs' arguments would permit any number of individuals with pending immigration benefit applications could sue in any district court so long as one individual resides there, regardless of the specifics of their applications. (ECF No. 17 at 4–5).

The matter was transferred to the undersigned District Judge as a related case on May 19, 2026, and the Court held a telephonic status conference to expedite briefing on Plaintiffs' request for emergency relief.[5] (ECF No. 16). Before reaching the merits of the preliminary injunction, the Court must address whether Plaintiffs' claims should be severed and individual cases transferred, as Defendants request.

---

[5] Although the Local Rules provide that a party moving for a preliminary injunction "shall obtain, from the office of the Judge to whom the action is assigned, a date and time for [an] informal conference" regarding necessary proceedings, S.D. Ohio Civ. R. 65.1, Plaintiffs' counsel did not do so due. (*See* ECF No. 9 at 1–2).

### III.    LAW & ANALYSIS

### A.  Joinder of Plaintiffs and Severance

The Federal Rules of Civil Procedure allow for the permissive joinder of parties, including multiple plaintiffs.  *See* Fed. R. Civ. P. 20.  Plaintiffs may be joined in one action where "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and "any question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P. 20(a)(1).

Permissive joinder "does not require a multitude of common questions or that common questions predominate, but rather that there be any question of law or fact common to all defendants that will arise in the action."  *G.M. v. Choice Hotels Int'l, Inc.*, 725 F. Supp. 3d 766, 775 (S.D. Ohio 2024) (Marbley, J.) (citations omitted; cleaned up).  The district court "has broad discretion in allowing or disallowing the joinder of parties, and the purpose of Fed. R. Civ. P. 20(a)(2) is to foster judicial economy and trial convenience."  *Williams v. City of Canton*, 2022 WL 17552459, at *2 (N.D. Ohio Dec. 9, 2022); *accord Ardolf v. Weber*, 332 F.R.D. 467, 479 (S.D.N.Y. 2019) ("The court also has discretion to drop a party for any just reason, even if the claims are properly joined.").  The Federal Rules of Civil Procedure favor "entertaining the broadest possible scope of action consistent with fairness to the parties" such that "joinder of claims, parties and remedies is strongly encouraged."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

In this case, Plaintiffs challenge the "adjudicatory hold" placed on their immigration benefit applications by USCIS policies, arguing that the hold places them in "indefinite, nationality-based limbo" in violation of the Administrative Procedure Act and the Immigration and Nationality Act.  (¶¶ 1, 6).  It is true, as Defendants argue, that these twenty-five individual

Plaintiffs have distinguishable cases:  they are citizens of different countries, reside in thirteen different states, have different legal statuses, and have different applications pending.  (ECF Nos. 11 at 1–4; 17 at 4).  But Plaintiffs challenge their individual adjudicatory holds arising from the same policies that are, at least ultimately, the same transactions or occurrences.  (¶¶ 1, 3–4).  They challenge these policies as being unlawful, which is a common question of law.  This is sufficient for permissive joinder of parties.  *See Meschi v. Edlow*, 2026 WL 1157151, at *1 (N.D. Cal. Apr. 29, 2026) (finding joinder of twenty nationals—sixteen Iranian, two Cuban, one Nigerian, and one joint Mexican/Venezuelan—proper to challenge the hold of Form I-765 applications by two of the challenged policy memoranda where one plaintiff resided in the judicial district).

But just as the federal rules allow for joinder of parties, they also provide a mechanism for courts to "add or drop a party" "on just terms."  Fed. R. Civ. P. 21.  Courts "may also sever any claim against a party."  *Id.*  Thus, even where the requirements for joinder are satisfied, severance still may still be appropriate.  *See In re Nintendo Co.*, 544 F. App'x 934, 939–40 (Fed. Cir. 2013) (a district court abuses its discretion in evaluating joinder where it fails to consider whether claims that can be permissively joined "*should* remain joined"); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) ("Even once these [joinder] requirements are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side. . . . [T]he district court may sever the trial in order to avoid prejudice." (citations omitted)).  Thus, although Plaintiffs have satisfied the necessary requirements for joinder and have been properly joined, the question remains whether their claims should stay joined, or whether Defendants' motion to sever should be granted.

When determining whether to sever claims, courts consider a number of factors including: (1) "whether the claims arise out of the same transaction or occurrence"; (2) "whether the claims

9

present some common questions of law or fact"; (3) "whether judicial economy would be facilitated"; (4) "whether prejudice would be avoided if severance were granted"; and (5) "whether different witnesses and documentary proof are required for separate claims." *Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018) (citation omitted). The district court has broad discretion to add or drop parties on the motion of any party or on the district court's own initiative at any stage of the action, so long as the change in parties is on just terms. *G.M.*, 725 F. Supp. 3d at 774. A careful consideration of the applicable factors leads to the conclusion that joinder is appropriate for Plaintiffs' claims; accordingly, as set forth below, Defendants' motion to sever is denied.

### 1. *Transaction or Occurrence*

The first question is whether Plaintiffs' claims come from the same transaction or occurrence. The Sixth Circuit has instructed that "[t]he words 'transaction or occurrence' are given a broad and liberal interpretation in order to avoid a multiplicity of suits," and the question of relatedness is one of whether there is a "logical relationship." *LASA per L'Industria Del Marmo Societa Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969). This test can often be difficult to apply, requiring a case-by-case analysis. *DIRECTV, Inc. v. Collins*, 244 F.R.D. 408, 410 (S.D. Ohio 2007) (Rice, J.).

This is one of those difficult cases. Although Plaintiffs' claims arise out of the same *ultimate* occurrence—the implementation of the challenged policy memoranda—many of the Plaintiffs in this case find themselves in differing circumstances than their co-plaintiffs due to differences in the *immediate* transactions and occurrences that led to their alleged injuries. (¶¶ 14–33). This was not the case in *Meschi*, where all twenty plaintiffs were suing over Form I-765 applications. *Meschi*, 2026 WL 1157151, at *1. Here, nineteen Plaintiffs have pending Form I-485s. Eighteen Plaintiffs have pending Form I-765s—some have multiple pending applications,

10

and one paid extra for expedited "premium" processing.  One Plaintiff's Form I-765 was approved, but she has not yet received her Employment Authorization Document.  Two Plaintiffs have pending Form I-129s—one for an H1-B visa, and one for an H1-B visa extension.  One Plaintiff has a pending Form I-131, and one Plaintiff has a pending Form I-85.  Nevertheless, the similarity shared across the Plaintiffs' claims is that USCIS has implemented new policies that have halted a variety of benefit applications in a variety of circumstances.  *Compare Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) (immigration plaintiffs' claims not sufficiently related to constitute the same transaction or occurrence where plaintiffs did *not* allege that their claims arose out of "a systemic pattern of events").

The uniform, common allegations regarding this halt are significant.  As Defendants concede, this is a shared "similarit[y]" across Plaintiffs' claims.  (ECF No. 11 at 8).  Plaintiffs' claims are related to one another in that all Plaintiffs allege that they are impacted by the same challenged USCIS policies, and there is a logical relationship connecting the Plaintiffs by their individual transactions with USCIS.

Generally, district courts find that multiple plaintiffs satisfy the same transaction or occurrence factor where they challenge the same underlying policies, and therefore courts deny requests to sever their claims.  For instance, one district court found that a variety of cities and counties were properly joined to challenge one of President Trump's January 2025 executive orders (which had limited the access of sanctuary jurisdictions to federal funds), even though the cities and counties received different funds and grants from the federal government.  *City and Cnty. of San Francisco v. Trump*, 2025 WL 2243619, at *2, *7 (N.D. Cal. Aug. 5, 2025).  In that case, because the challenged policies were the same, the reasons for each plaintiffs' alleged injuries "are common" and the source of those injuries "arose at the same time" for each plaintiff.  *Id.* at

11

*8. The same logic applies for a variety of foreign national plaintiffs who challenge the same underlying USCIS policies, even if their pending immigration benefit applications vary like the federal funds and grants in *San Francisco*. Indeed, the district court in *Meschi* permitted the joinder of foreigners variously of Iranian, Cuban, Nigerian, Mexican, and Venezuelan nationality to challenge the same underlying USCIS policies because the *source* of the hold on those foreigners' pending Form I-795 applications was the same challenged policies for all plaintiffs. *Meschi*, 2026 WL 1157151, at *1 ("Plaintiffs were not misjoined. Each of their I-765 applications was placed on hold [by the same USCIS policies], and Plaintiffs all contend that the hold was unlawful under the Administrative Procedure Act . . . among other laws."). The fact that the Plaintiffs here are situated differently in their individual applications is irrelevant, because they are challenging the same blanket holds arising from the same USCIS policies. They are not challenging the substance of individualized adjudications on their applications—they are alleging that those policies are preventing any individualized adjudication. *See, e.g.*, *Ayala v. Noem*, 781 F. Supp. 3d 1187, 1204–05 (D.N.M. 2025) ("Plaintiffs do not challenge substantive adjudications on their petitions; rather, their claims relate to USCIS's unreasonable delay in making a decision one way or another. For these reasons, joinder of Plaintiffs is proper."); *Hernandez v. Jaddou*, 792 F. Supp. 3d 739, 745–46 (S.D. Tex. 2025) ("Plaintiffs' varied backgrounds and circumstances do not prevent the joinder of their claims because Plaintiffs do not allege that the delay is specific to their individual applications. Rather, Plaintiffs allege that USCIS' internal policies and practices have caused an unreasonable delay in dealing with *all* applications for a U-visa.").

The Court agrees with the rationale of *San Franciso*, *Meschi*, *Ayala*, *Hernandez*, and the majority of other district courts that have considered analogous issues in light of sweeping immigration policies that create uniform effects challenged by plaintiffs across pending

12

immigration benefit applications. *See, e.g.*, *Doe 1 v. Bondi*, 785 F. Supp. 3d 1268, 1281 (N.D. Ga. 2025) ("Plaintiffs' claims here stem from a seemingly uniform action taken by Defendants without individualized notice, affecting their academic standing and immigration status. Plaintiffs' experiences present common legal questions such as the legality of Defendants' actions. . . ."); *Mahonak v. Rubio*, 2025 WL 449044, at *11 (C.D. Cal. Feb. 10, 2025) (finding joinder appropriate, denying invitation to sever, and determining claims arose out of sufficiently similar transactions or occurrences where Iranian plaintiffs with pending visa applications alleged harm by "the same policies purportedly caus[ing] the delay on all of Plaintiffs' applications" in the process); *Jamal v. Pompeo*, 2019 WL 7865175, at *3 (C.D. Cal. Nov. 19, 2019) (finding joinder appropriate and denying invitation to sever where plaintiffs alleged a "common" "pattern or policy of delay" in adjudicating applications for Syrian nationals under Presidential Proclamation 9645 in 2017).[6]

There is a "common nexus" shared between Plaintiffs' allegations that warrants their joinder. *Mann v. Mohr*, 802 F. App'x 871, 876 (6th Cir. 2020). This factor weighs against severance.

---

[6] True, one district court in this circuit reached a different determination when evaluating Presidential Proclamation 9645 as applied to a large group of 86 Yemeni plaintiffs. Observing that the pleadings had resulted in thousands of pages, with significant "variability" for the factual circumstances of the plaintiffs, that district court determined that the transactions or occurrences at issue were *not* unitary, reaching that determination due to the "wide-ranging and voluminous allegations of individual circumstances . . . not aris[ing] from any single occurrence or series of occurrences," and determining that their claims and sought relief would hinge on their individual circumstances. *Ahmed v. Miller*, 452 F. Supp. 3d 721, 723–24, 726 (E.D. Mich. 2020). But *Ahmed* dealt with different policies and is distinguishable based on its analysis of the sought relief in that case. *Cf. Doe 1*, 785 F. Supp. 3d at 1280–81 (rejecting *Ahmed* as inapplicable where plaintiffs challenged uniform action). In this case, Plaintiffs' claims stem from USCIS' uniform application of the challenged policies, and the Court finds that *Ahmed*'s reasoning inapposite.

### 2. *Common Question of Law or Fact*

Next, the Court considers whether there is a common question of law or fact shared by the Plaintiffs.  This requirement "is usually easily met." *Collins*, 244 F.R.D. at 410; *accord Scott v. Fairbanks Cap. Grp.*, 284 F. Supp. 2d 880, 888 (S.D. Ohio 2003) (Rice, J.) (all plaintiffs asserted similar claims relying on the same legal theory).  This case is no exception.  Indeed, the Complaint shows that the Plaintiffs allege that they are *not* receiving individualized attention due to USCIS' challenged policies, and all Plaintiffs challenge the same policies as unlawful.  (¶¶ 1–7).  This is sufficient for the purposes of joinder.  *See G.M.*, 725 F. Supp. 3d at 775.  This factor weighs against severance.

### 3. *Judicial Economy*

The Court must also determine whether severing the Plaintiffs' claims into individual cases would serve the interests of judicial economy.  Judicial economy is often served by joining parties and "entertaining the broadest possible scope of action consistent with fairness to the parties." *Gibbs*, 383 U.S. at 724.

Plaintiffs all allege that their immigration benefit applications were placed on hold by the challenged USCIS policies, and all argue that such holds are unlawful.  (¶¶ 1–7).  The basis for Plaintiffs' injuries is common; hence, the type of application held is immaterial insofar as the legality of the challenged policies is concerned.  *Cf. San Franciso*, 2025 WL 2243619, at *8 ("The reasons for [plaintiffs'] injury are common.  The source of their injury arose at the same time for each of them."); *Meschi*, 2026 WL 1157151, at *1 (similar); *Ayala*, 781 F. Supp. 3d at 1205 (similar); *Hernandez*, 792 F. Supp. 3d at 745 (similar); *Doe 1*, 785 F. Supp. 3d at 1281 (similar).  Indeed, "if all the plaintiffs were severed, there would be numerous district courts engaged in the same analysis around the country." *San Franciso*, 2025 WL 2243619, at *9.  The Federal Rules

of Civil Procedure must "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, which would not happen if these cases were severed and scattered across the country.

While it is true that the twenty-five Plaintiffs in this case are not similarly-situated in terms of their legal status,[7] their pending benefit applications, their country of origin, or their physical residence in the United States,[8] they challenge a common hold on their applications and seek adjudication "within a reasonable time and without regard to the Challenged Policies." (Compl. at 43). This is sufficient for joint evaluation at this early stage in the case. *Cf. Abdulraheemzai v. Noem*, 2026 WL 1113722, at *2–3, 14 (N.D. Cal. Apr. 24, 2026) (joint evaluation of claims appropriate where all plaintiffs where Afghan parolees under "Operation Allies Welcome," and complaint did "not seek a judicial determination on the merits" of their claims). Although "different claims might ultimately turn out to be better tried separately," this is a "weak argument for denying joinder in a complaint." *Altowaiti v. Cissna*, 2018 WL 11446810, at *3 (S.D.N.Y. June 11, 2018) (citation and internal quotation marks omitted). Here, judicial economy would be served by joinder of the parties, and this factor weighs decisively against severance.

### 4. *Avoidance of Prejudice*

Next, the Court must consider whether severance would lead to prejudice. The avoidance of prejudice asks whether a party would be inconvenienced by the severing of cases. *See Shina v.*

---

[7] Compare John Doe 1's asylee status (¶ 14) with the valid F-1 Student status of John Does 4 and 5 (¶¶ 17–18).

[8] Compare John Doe 1's pending Form I-485 (¶ 14); Jane Doe 9's pending Form I-485, pending Form I-129 for H1-B extension, and approved Form I-765 without an issued Employment Authorization Document (¶ 22); John Doe 17's pending Form I-129 for H-1B (¶ 30), and Jane Doe 20's pending Form I-85 and pending Form I-765 (¶ 33). Aside from having different benefit applications in different stages of process, all four of these Plaintiffs hale from different countries and presently live in different states.

15

*State Farm Fire and Cas. Co.*, 2021 WL 391419, at *8 (E.D. Mich. Feb. 4, 2021).  Generally, it does not prejudice a party to refile in the appropriate court.  *Cf. id.* (determining, in evaluating whether to exercise supplemental jurisdiction, that "the need to re-file cases in state court is not seen as a significant enough prejudice that it warrants federal courts retaining jurisdiction over cases more appropriately heard by state court").  Where a party's efforts "might well be wasted and duplicative" by "litigating essentially identical cases," however, the avoidance of prejudice militates against severance.  *Id.*  The considerations of judicial economy often inform the evaluation of possible prejudice.  *See id.*

As discussed, the interests of judicial economy weigh against severance, as in this case the Plaintiffs' efforts would be duplicative by litigating the same case against the challenged USCIS policies across thirteen federal judicial districts, as Defendants invite.  (ECF No. 11 at 10–11).  Meanwhile, it is difficult to see how Defendants could be prejudiced by having to defend against the one consolidated action in this district court when they concede that the Southern District of Ohio is a proper venue for John Doe 1's claims.  (ECF No. 17 at 1).  Although Defendants point out that Plaintiffs' applications are unique and require separate processing, they do not explain how Plaintiffs' requested relief would prejudice them, and it is unclear whether Defendants even take that position.  (*See id.* at 5–6).  This factor weighs against severance.

### 5.  *Adjudication of Different Claims Requiring Different Witnesses and Documents*

The final factor delineated in *Parchment* is whether the adjudication of the claims in the case will require different witnesses and documentary proof.  Where there may be "significant overlap between the discovery," joinder is more appropriate.  *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, 2016 WL 6995271, at *4 (N.D. Ohio Nov. 30, 2016).  By contrast, where discovery would "entail review of separate materials produced by separate [parties]," this factor favors

16

severance. *Cruikshank v. Berne Township*, 2024 WL 4588777, at \*4 (S.D. Ohio Oct. 28, 2024) (Morrison, C.J.).

This factor may normally favor severance if various foreign nationals were to sue together to seek adjudication on different pending immigrant benefit applications, as USCIS would presumably hold application materials for each individual Plaintiff across different field offices in many different states. *See Chakrabarti v. U.S. Citizenship & Immigr. Servs.*, 2021 WL 4458899, at \*4, \*7 (D. Md. Sept. 29, 2021) ("[A]ny relevant administrative records will be located in the service centers or field offices where Plaintiffs' applications are currently pending. . . . USCIS personnel who would be most aware of the status of a Plaintiff's application and delays in processing the application are clearly located at the various USCIS service centers and field offices around the country."); *accord Chenari v. U.S. Citizenship & Immigr. Servs.*, 2024 WL 895111, at \*4 (D. Md. Mar. 1, 2024) ("Plaintiffs' claims are based upon individualized facts. Although Plaintiff's claims all relate to delay in the asylum process, the circumstances are individual to each.").

That is not the case here, however, where the issue is the legality of the same USCIS policies creating indefinite holds across pending immigration benefit applications. Plaintiffs' allegations, at their core, strike at a common agency process that created the challenged policies. Thus, there will likely be significant overlap in discovery. *E.g.*, *Hernandez*, 792 F. Supp. 3d at 745 ("The crux of this case is likely to revolve around a common set of operative facts pertaining to USCIS' internal policies and practices rather than a multitude of independent adjudications for each application."). This factor weighs against severance.

In sum, all *Parchment* factors weigh against severance.

### B.  Transfer of Venue

Following their request to sever Plaintiffs' claims, Defendants also seek transfer under 28 U.S.C. § 1404, arguing that venue should be transferred out of the Southern District of Ohio for all Plaintiffs except John Doe 1.  (ECF No. 11 at 6–7).  Federal law provides for the appropriate venue in civil actions where a defendant is either  an "officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority," a federal agency, or the United States itself.  28 U.S.C. § 1391(e)(1).  These civil actions may be brought in federal district courts where:  (A) "a defendant in the action resides"; (B) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated"; or (C) "the plaintiff resides if no real property is involved in the action." *Id.*

### 1.  *Applicable Venue Transfer Standard*

When a case is brought in a permissible forum, venue may be changed "[f]or the convenience of parties and witnesses[] [and] in the interest of justice," allowing district courts to transfer civil actions "to any other district or division where it might have been brought or . . . to which all parties have consented." 28 U.S.C. § 1404(a).  Alternatively, venue must be changed (if the action is not dismissed) when the case is "brought in an impermissible forum."  *Martin v. Stokes*, 623 F.2d 469, 471 (6th Cir. 1980).  Under such circumstances, venue can be transferred "to any district or division in which [the case] could have been brought" if it is "in the interest of justice" to transfer the case rather than dismiss it.  28 U.S.C. § 1406(a).

Here, § 1404 governs venue transfer, as John Doe 1 resides in this district and thus Plaintiffs' claims could appropriately be brought in this forum.  *See generally Sidney Coal Co. v. Soc. Sec. Admin.*, 427 F.3d 336, 345–46 (6th Cir. 2005) (holding that "the residency requirement

of [28 U.S.C. § 1391(e)] is satisfied if at least one plaintiff resides in the district in which the action has been brought"). Thus, the Court must consider the balancing language of § 1404(a) to determine whether transfer to another forum is justified. *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *15 (S.D. Ohio Apr. 25, 2023) (Marbley, J.). In doing so, the Court considers both the private interests of the parties and public-interest concerns. *See Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006).

The private interest factors include: (1) "the plaintiff's choice of forum"; (2) "where the parties reside"; (3) "the location of willing and unwilling witnesses"; (4) "the location of evidence"; and (5) "the locus of events that 'gave rise to the dispute.'" *Olin-Marquez v. Arrow Senior Living Mgmt., LLC*, 586 F. Supp. 3d 759, 776 (S.D. Ohio 2022) (Sargus, J.). Meanwhile, the public interest factors include: (1) "the court's interest in judicial economy"; (2) "docket congestion"; (3) "local interest in deciding the controversy at home"; and, in diversity cases, (4) "the interest of conducting the trial in the forum of the governing law." *Id.* at 778. The public interest analysis is imbued by "the public's general interest in 'systemic integrity and fairness.'" *Id.*

### 2. *Private Interest Factors*

The first two private interest factors evaluate the choice of forum and the location of the parties. Because this case does not involve real property, but does involve two Defendants who are sued in their official capacities as officers of USCIS and DHS, the appropriate venue for each individual Plaintiff's claims would either be the federal district court where the Government office is located that is handling that individual Plaintiff's claims, pursuant to 28 U.S.C. § 1391(e)(1)(B), or the federal district where the individual Plaintiff resides, pursuant to 28 U.S.C. § 1391(e)(1)(C). Plaintiffs chose to bring this suit in this forum, which is a choice that Courts will rarely disturb.

19

*See Tanyike v. United States*, 603 F. Supp. 3d 572, 581 (S.D. Ohio 2022) (Rose, J.). Here, their lawsuit is properly venued in the Southern District of Ohio because John Doe 1 resides here, and the Court has already determined that Plaintiffs' claims were properly joined and should not be severed. Thus, the first private interest factor weighs against transfer. "For venue purposes, agencies and agency heads reside where they 'maintain [their] official residence,' *i.e.*, 'perform [their] official duties.'" *Alghooneh v. U.S. Dep't of State*, 2025 WL 3079363, at *2 (E.D. Mich. Nov. 4, 2025) (quoting *O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972)). The official residence of USCIS and Director Edlow is the District of Maryland. *Pouri v. U.S. Dep't of Homeland Sec.*, 2026 WL 1508425, at *4 (D.D.C. May 30, 2026) ("USCIS is now headquartered in Maryland."). The official residence of DHS and Secretary Mullin is the District of Columbia. *Bourdon v. U.S. Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 304 (D.D.C. 2017). But the home districts of Defendants Edlow and Mullin do not meaningfully alter their argument "since they are not seeking a transfer to the District of Maryland"[9] or the District of Columbia on that basis. *Akinyode v. U.S. Dep't of Homeland Sec.*, 2021 WL 3021440, at *4 n.2 (D.D.C. July 16, 2021). This second private interest factor is neutral.

The third and fourth private interest factors consider the location of witnesses and evidence. The witnesses and evidence for the individual pending benefit applications would likely be spread across the country at various USCIS offices handling each application for the individual Plaintiffs. (*See* ECF No. 11 at 13–16). In normal immigration benefit application cases, the plaintiff foreign national is considered the key witness, "making his home district a better venue." *Liu v. Mayorkas*, 737 F. Supp. 3d 1, 6 (D.D.C. 2024). But this is not a normal case, and this case is not about the

---

[9] Defendants do seek to transfer the claims of Jane Doe 13 and Minor Doe 13 to the District of Maryland, on the basis that these Plaintiffs reside in Baltimore, Maryland. (ECF No. 11 at 11).

individual adjudication of pending applications.  It is about the legality of USCIS' *hold* on the individual adjudication of pending applications.  (*See* ECF No. 14 at 1).  Thus, the pressing inquiry is to the location of witnesses and evidence regarding the challenged USCIS policies.  This evidence is likely to be found at USCIS headquarters in Maryland, (*id.* at 9), and the USCIS employees devising the challenged policies are also likely to be found there.  The convenience of witnesses who are a party's employees is generally given less weight, but here the third factor still weighs in favor of transfer given that none of the most pertinent witnesses is expected to be present in this district, and many may be hundreds of miles away.  *Tanyike*, 603 F. Supp. 3d at 581 (considering the interests of the Government in having its witnesses travel).  Regardless, this third factor has minimal weight in this case.  By contrast, when it comes to documentary evidence, there is no suggestion that any relevant documentary evidence could not be made available here in the Southern District of Ohio.  Thus, the fourth factor is neutral.  *Id.*; *Pouri*, 2026 WL 1508425, at *4 ("Plaintiff's claims are primarily legal in nature and likely to be based solely on the administrative record." (citation omitted)); *cf. In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *19 ("[E]lectronic evidence can be moved easily and there are no facts to suggest physical evidence is inaccessible to this Court.").

For the final private interest factor, in Administrative Procedure Act cases, the underlying claim typically arises where the decisionmaking process occurred.  *Liu*, 737 F. Supp. 3d at 6.  This might generally imply the appropriate venue would be the district where USCIS policies are promulgated.  But in this case, given the "unique, nationwide nature" of the Presidential Proclamations impacting foreign nationals across the country, the Court finds this factor to be neutral.  *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *19; *see also Pouri*, 2026 WL 1508425, at *4 (rejecting argument that "direct challenges to nationwide [immigration] policies" should be

transferred to USCIS office location).  In sum, one private interest factor weighs against transfer, one weighs minimally for transfer, and three are neutral.

### 3. Public Interest Factors

The public interest factors do not alter this overall balance.  First and most significantly, judicial economy weighs against transferring this case.  *See* Section III(A)(3), *supra*.  This case consolidates the related claims of twenty-five Plaintiffs who, at bottom, challenge the same USCIS policies promulgated following the same executive actions.  Combining their claims into one case would serve the goals of efficiency and timely resolution of the same legal issue, which otherwise would need to be resolved repeatedly across cases and districts with varying caseloads.

Second, the Court does not find that any relief to its own docket would augur in favor of transferring parts of this case, which can be decided together for purposes of judicial economy.  *Cf. In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *20 ("A court should not look to docket conditions to serve the court's convenience when considering § 1404(a) transfer.").  This public interest factor is neutral.

Third, although there might be some local interest in deciding each of the individual Plaintiff's lawsuits in the locality where that Plaintiff resides, or in Maryland where USCIS engages in its decisionmaking, that local interest is not significant here.  This case concerns challenged USCIS policies and executive actions that have national importance and impact individuals in every judicial district in the country, including John Doe 1 in the Southern District of Ohio.  *See Pouri*, 2026 WL 1508425, at *4 ("The District of Maryland . . . has no more a local

22

interest than [the District of Columbia] in adjudicating a challenge to a nationwide policy brought by a resident of Virginia."). This public interest factor is neutral.[10]

Finally, this matter arises under federal question jurisdiction, and the governing law of the forum is simply inapplicable.

Taken as a whole, the public and private interests weigh against transfer. Because the Court declines Defendants' requests to sever the claims asserted by the Plaintiffs into separate cases and to transfer those cases to different judicial districts, the Court also finds Defendants' request for additional time to respond to severed cases moot.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs' claims are properly joined, and that severance of the claims would be improper under *Parchman*. Additionally, Plaintiffs' lawsuit is properly venued in the Southern District of Ohio, and the public and private interests weigh against transferring any part of the case under 28 U.S.C. § 1404(a) at this time.

To the extent that Defendants sought additional time to respond to Plaintiffs' pending motion for a preliminary injunction, that request is denied as moot. Plaintiffs' motion for a preliminary injunction has been pending for a month, and the Court ordered Defendants to respond by June 8, 2026 at the May 26, 2026 telephonic status conference. (ECF No. 18). Defendants' motion (ECF No. 11) is **DENIED**, in part **as moot**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: June 2, 2026**

---

[10] The Court may reevaluate this determination should forum-shopping issues manifest. (*See* ECF No. 17 at 4–5).

23